OPINION
{¶ 1} Defendant-appellant, Eric Williamson, appeals his conviction in the Hamilton Municipal Court for resisting arrest. We affirm appellant's conviction.
 {¶ 2} On April 2, 2002, Officers William Bulman and Brian Purdy of the Fairfield Township Police Department responded to a report of an assault on Parish Avenue in Fairfield Township, Butler County. Upon arriving at the scene, Ann and John Carpenter informed the officers that they had been assaulted. Though they did not know their assailant's name, the Carpenters were familiar with him and knew that he lived on Parish Avenue. They gave the officers a physical description of their assailant, and stated that he had been driving a blue tow truck with the words "Wagers Towing" on the side.
 {¶ 3} The officers subsequently drove on Parish Avenue toward where the victims believed their assailant lived, traveling out of Fairfield Township and into the city of Hamilton. The officers soon observed a blue tow truck with the words "Wagers Towing" on the side, parked in front of appellant's home. The officers then observed appellant standing in his front yard. Appellant matched the physical description provided by the victims. After asking appellant several questions, the officers confirmed that appellant had been driving the blue tow truck parked in front of his house.
 {¶ 4} While appellant was in his front yard, Officer Purdy informed him that he was under arrest for assault. The officers then opened the gate to appellant's fenced-in front yard and attempted to arrest him. Appellant refused to cooperate, telling the officers to leave his property. A struggle ensued, during which the officers used pepper spray and their batons. When Officers Purdy and Bulman were unable to subdue appellant, they called additional officers to the scene. With the help of the additional officers, Officers Purdy and Bulman took appellant into custody.
 {¶ 5} Appellant was subsequently charged in Hamilton Municipal Court with resisting arrest in violation of R.C.2921.33, a first-degree misdemeanor, and obstructing official business in violation of R.C. 2921.31, a fifth-degree felony.[1] Appellant pled "not guilty" to both charges. Following a bench trial in June 2002, the municipal court found appellant guilty of resisting arrest, but not guilty of obstructing official business.
 {¶ 6} Appellant now appeals his conviction for resisting arrest, assigning the following two errors:
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "The trial court erred to the prejudice of the defendant/appellant in finding him guilty of the offense of resisting arrest, as the warrantless arrest at the appellant's home was illegal; therefore the evidence was insufficient to support a guilty finding."
 {¶ 9} Assignment of Error No. 2:
 {¶ 10} "The trial court erred to the prejudice of the defendant/appellant in finding appellant guilty of the offense of resisting arrest, as the warrantless arrest by fairfield township Officers outside their territorial jurisdiction was illegal; therefore the evidence was insufficient to support a guilty finding."
 {¶ 11} In both of appellant's assignments of error, he argues that there was insufficient evidence before the municipal court to support a resisting arrest conviction. Specifically, appellant argues that the state did not prove an essential element of the crime of resisting arrest: a lawful arrest. First, appellant argues that the arrest was unlawful because the arrest violated his rights under the Fourth Amendment. Second, appellant argues that the arrest was unlawful because, pursuant to R.C.2935.03(D), the officers were not authorized to arrest appellant outside of their territorial jurisdiction.
 {¶ 12} When an appellate court reviews a claim that a conviction is not supported by sufficient evidence, its inquiry focuses upon the adequacy of the evidence. State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52. After viewing the evidence in a light most favorable to the prosecution, the court must determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Carter, 72 Ohio St.3d 545, 553, 1995-Ohio-104.
 {¶ 13} R.C. 2921.33(A) states that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." The crime of resisting arrest as defined in R.C. 2921.33(A), includes, as an essential element, a lawful arrest. State v. Miller (1990), 70 Ohio App.3d 727, 730. Therefore, appellant could be convicted of resisting arrest only if his underlying arrest was lawful.
 {¶ 14} We first address appellant's Fourth Amendment argument. Appellant argues that the officers violated hisFourth Amendment rights by arresting him in his front yard without a warrant. Appellant asserts that his front yard should be considered within the curtilage of his home for Fourth Amendment purposes.
 {¶ 15} The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their * * * houses * * * against unreasonable searches and seizures." A presumption of unreasonableness attaches to all warrantless home entries. Welsh v. Wisconsin (1984), 466 U.S. 740, 750,104 S.Ct. 2091. A warrantless arrest in a public place, however, when based on probable cause, does not violate the Fourth Amendment.United States v. Santana (1976), 427 U.S. 38, 42,96 S.Ct. 2406.
 {¶ 16} The Fourth Amendment's protection against warrantless home entries extends to the "curtilage" of an individual's home.United States v. Dunn (1987), 480 U.S. 294, 300,107 S.Ct. 1134. "Curtilage" has been defined as an area "[s]o intimately tied to the home itself that it should be placed under the home's `umbrella' of Fourth Amendment protection." State v. Payne
(1995), 104 Ohio App.3d 364, 368, quoting Dunn at 301. The central inquiry is "whether the area harbors the `intimate activity associated with the sanctity of a man's home and the privacies of life.'" Dunn at 300, quoting Oliver v.United States (1984), 466 U.S. 170, 180, 104 S.Ct. 1735.
 {¶ 17} Dunn set forth four factors for consideration in determining whether a certain area outside the home itself should be treated as curtilage: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by. Dunn,480 U.S. at 301.
 {¶ 18} Courts have held that a doorway to a residence, as well as a residence's porch, are not within the curtilage of a home. See Santana, 427 U.S. at 42; State v. Lomak (Mar. 11, 1999), Franklin App. No. 98AP-708. However, an attached garage may be part of a home's curtilage for Fourth Amendment purposes.State v. Cooper (Sept. 26, 1997), Greene App. No. 97-CA-15.
 {¶ 19} Examining the four factors set forth in Dunn, we find that appellant's front yard was not within the curtilage of his home for Fourth Amendment purposes. Despite the proximity of the yard to appellant's house and the fact that a fence apparently enclosed the yard, there is no evidence in the record indicating that appellant protected his yard from observation by passers-by. Officer Bulman testified at trial that he and Officer Purdy observed appellant in his front yard. Appellant's neighbor, Starlene Crawford, testified that she observed appellant standing in his yard when Officers Bulman and Purdy arrived. According to her testimony, she reached over appellant's fence and held appellant's dog while the officers scuffled with appellant. Another neighbor, Andy Emmert, testified that he observed the incident in appellant's yard from his porch across the street.
 {¶ 20} Having reviewed the trial transcript, we find no indication that appellant's front yard harbored the "intimate activity associated with the sanctity of a man's home." Dunn,480 U.S. at 300. Appellant's front yard appears to have been less closely tied to his home than a porch or a doorway, both of which have been held not to be within a home's curtilage. Accordingly, appellant's front yard was not within the curtilage of his home for Fourth Amendment purposes.
 {¶ 21} Having determined that appellant's front yard was not within the curtilage of his home, appellant's arrest on the assault charge was therefore lawful under the Fourth Amendment. Given the statements and physical description obtained from the victims, the officers clearly had probable cause to make a warrantless arrest of appellant outside of his home.
 {¶ 22} We now address appellant's argument that the arrest was unlawful because the officers were not authorized to arrest him outside of their territorial jurisdiction. R.C. 2935.03(B)(1) states that a law enforcement officer may make a warrantless arrest of any person who the officer has reasonable grounds to believe has committed an offense of violence within the officer's territorial jurisdiction. R.C. 2935.03(D) provides that a law enforcement officer authorized to make a warrantless arrest pursuant to R.C. 2935.03(B) may "pursue, arrest, and detain" the person outside the limits of the officer's territorial jurisdiction, provided that all of the following apply:
 {¶ 23} (1) The pursuit takes place without unreasonable delay after the offense is committed;
 {¶ 24} (2) The pursuit is initiated within the limits of the officer's territorial jurisdiction;
 {¶ 25} (3) The offense involved is a felony, a first-degree misdemeanor, a second-degree misdemeanor, or any offense for which points are chargeable pursuant to R.C. 4507.021(G).
 {¶ 26} Appellant concedes that the pursuit took place without unreasonable delay and that the offense involved was a first-degree misdemeanor. However, appellant argues that the "pursuit" did not commence within the officers' territorial jurisdiction. Appellant argues that there was no "pursuit," but that there was merely an "investigation," which led Officers Purdy and Bulman to appellant's home in the city of Hamilton.
 {¶ 27} We disagree with appellant's argument and his narrow interpretation of "pursuit." We agree with the court's holding inState v. Winters (Feb. 7, 1990), Hamilton App. No. C-880773, 1990 WL 10977, at *2, that "`pursuit' under R.C. 2935.03(D) need not be an uninterrupted chase, but may be part of the police investigation of an earlier crime." See, also, State v.Tissandier (Nov. 2, 1998), Clinton App. No. CA98-06-017. Based on Officer Bulman's trial testimony, he and Officer Purdy obtained statements and a physical description from the victims, and then immediately drove to where appellant likely would be. We find that these actions amounted to a "pursuit" within the meaning of R.C. 2935.03(D). Therefore, the officers were authorized by statute to arrest appellant in the city of Hamilton, provided they had probable cause to do so. As previously stated, the officers had probable cause to arrest appellant.
 {¶ 28} Accordingly, there was sufficient evidence presented at trial showing that appellant's arrest was lawful. There was also sufficient evidence showing that appellant did recklessly "resist or interfere" with his arrest. Therefore, there was sufficient evidence to convict appellant of the crime of resisting arrest. Appellant's two assignments of error are overruled.
 {¶ 29} The judgment is affirmed.
Judgment affirmed.
Young, P.J., and Valen, J., concur.
[1] Appellant was charged in Butler County Area II Court with assault.