JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Daniel L. Higgins, appeals from the judgment of the Common Pleas Court, rendered after a bench trial, finding him guilty of carrying a concealed weapon and sentencing him to one year of community control sanctions. We affirm.
 {¶ 2} The record reflects that in July 2004, the Grand Jury indicted Higgins on one count of felonious assault in violation of R.C. 2923.11, with firearm specifications, one count of carrying a concealed weapon in violation of R.C. 2923.12, and one count of domestic violence in violation of R.C. 2919.25. The trial court subsequently dismissed the felonious assault and domestic violence counts upon the State's motion to dismiss.
 {¶ 3} At trial, Cleveland police officer Dennis Lally testified that at approximately 9:41 p.m. on June 6, 2004, he was dispatched to the area of West 58th Street and Lorain Avenue in Cleveland, Ohio in response to a telephone call from a woman who had reported that a male with a gun had threatened to kill her. Officer Lally testified that when he arrived at the scene, he saw a woman standing by a pay phone. The woman, who identified herself as Gail Burnell, was hysterical and screaming that a man with a gun had threatened to kill her. Officer Lally interviewed Burnell, who gave a physical description of the man and then told him that the man was "around the corner standing by a brown car between the steps and the front of the house."
 {¶ 4} After a back-up zone car arrived, Officer Lally and Cleveland police officer George Kirby walked around the corner. Officer Lally testified that they saw a man who matched Burnell's description standing by a brown car, just as Burnell had described. As he got closer, Officer Lally saw a gun clip on the man's waistband. Officer Kirby testified that as he approached Higgins, he observed a bulge in the back of his clothing, so he told him to turn around and put his hands over his head. When Officer Kirby patted Higgins down, he found a loaded, operational, 9 millimeter handgun in his waistband. The officers subsequently found a modified, loaded 12-gauge shotgun and a bag of shells on the top steps of Higgins' porch, which was approximately 30 feet away from where he was apprehended.
 {¶ 5} Higgins waived a jury trial and the case proceeded to a bench trial. The judge found Higgins guilty of carrying a concealed weapon and sentenced him to one year of community control sanctions.
 {¶ 6} In his first assignment of error, Higgins argues that he was denied his constitutional right to effective assistance of counsel because his lawyer did not file a motion to suppress evidence of the guns found at the scene. Higgins asserts that an anonymous tip, without more, is insufficient to constitute a reasonable belief of wrongdoing adequate to justify a stop and frisk. He contends that Officers Lally and Kirby should therefore have done more investigation of the "anonymous tip" in this case before they approached Higgins and because they did not do so, the stop and frisk were illegal. Higgins contends that his lawyer was ineffective for not raising this issue in the trial court by way of a motion to suppress.
 {¶ 7} A police officer may make a brief, warrantless, investigatory stop of an individual where the officer reasonably suspects that the individual is or has been involved in criminal activity. Terry v. Ohio (1968), 392 U.S. 1, 20 L.Ed.2d 889,88 S.Ct. 1868. In assessing that conclusion, the officer must be able to point to specific and articulable facts which, taken together with rational inference from those facts, reasonably warrant the intrusion. State v. Andrews (1991),57 Ohio St.3d 86, citing Terry, supra. Whether an investigatory stop is reasonable depends upon the totality of the circumstances surrounding the incident. State v. Williams (1990),51 Ohio St.3d 58, 60.
 {¶ 8} Reasonable suspicion need not be based only on an officer's personal observations; it may arise from information supplied by an anonymous informant. Alabama v. White (1990),496 U.S. 325, 331, 110 L.Ed.2d 301, 110 S.Ct. 2412; Adams v.Williams (1972), 407 U.S. 143, 32 L.Ed.2d 612, 92 S.Ct. 1921. Whether an anonymous tip can form the reasonable basis for an investigatory stop depends upon both the content of the information relayed to police and its degree of reliability.Alabama, 496 U.S. at 330. A tip which alone would not be sufficiently reliable may establish reasonable suspicion to make an investigatory stop if it is sufficiently corroborated through independent police work. Id.
 {¶ 9} That said, the problem with Higgins' argument is that the "tip" in this case was not anonymous. Rather, the victim of the crime, who was on the scene, called police and reported that Higgins was threatening to kill her. Furthermore, she stayed on the scene until police officers arrived, identified herself, reported Higgins' threats against her, and then described him and told the officers where they could find him. Moreover, there was evidence to corroborate the information provided by Burnell: as the officers approached Higgins, they saw a gun clip on his waist and a suspicious bulge in the back of his clothing.
 {¶ 10} We find Burnell's report more than sufficient to provide the officers with reasonable suspicion of criminal activity to make the investigatory stop and subsequent frisk. Accordingly, because the stop and frisk were legal, Higgins' argument that his lawyer was ineffective for not filing a motion to suppress is without merit.
 {¶ 11} Appellant's first assignment of error is overruled.
 {¶ 12} In his second assignment of error, Higgins argues that the trial court erred in denying his Crim.R. 29(A) motion for acquittal because the evidence was insufficient to support a conviction.
 {¶ 13} Crim. R. 29(A) provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 14} Higgins was convicted of carrying a concealed weapon in violation of R.C. 2923.12, which provides that "no person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, * * * a deadly weapon, * * * handgun * * [or] dangerous ordnance."
 {¶ 15} Higgins first argues that the evidence was insufficient to support his conviction because there was "no evidence or testimony presented by the State that [he] was carrying a concealed weapon." We are astonished at this assertion. Officer Kirby testified that as he approached Higgins he saw a suspicious bulge underneath his clothing, and when he patted him down, he found a loaded, operational handgun in his waistband. Officer Kirby testified further that there was a modified, loaded, operational 12-gauge pump shotgun on Higgins' porch, within his reach. This testimony, construed in a light most favorable to the prosecution, is clearly sufficient to indicate that Higgins was carrying a concealed weapon.
 {¶ 16} Higgins also argues that the evidence was insufficient because he was lawfully on his own property and he complied with the police officers' requests to put his hands above his head and turn around.
 {¶ 17} Higgins' argument that the evidence was insufficient because he complied with the officers' requests to turn around and put his hands above his head is obviously irrelevant to whether the State produced sufficient evidence to support each element of the offense.
 {¶ 18} With respect to Higgins' argument that the evidence was insufficient because he was on his own property, we note that R.C. 2923.12(D)(3) provides that it is an affirmative defense to a charge of carrying a concealed weapon that "the weapon was carried or kept ready at hand by the actor for any lawful purpose and while in the actor's own home." (Emphasis added).
 {¶ 19} The evidence at trial established that, as the police officers approached, Higgins was standing next to a car, in an alleyway near the street, approximately 30 feet away from his home. This evidence, construed in a light most favorable to the prosecution, is sufficient to indicate that Higgins was not in his home when he was apprehended carrying the concealed weapon. In a related context, courts have held that although Fourth Amendment protection against warrantless home entries extends to the "curtilage"[1] of an individual's home, the doorway to a residence, as well as a residence's porch, are not within the curtilage of a home. Williamson, supra, 2004-Ohio-2209, at ¶18, citing United States v. Santana (1976), 427 U.S. 38, 42,96 S.Ct. 2406, 49 L.Ed.2d 300; State v. Lomak (Mar. 11, 1999), Franklin App. No. 98AP-708. Accordingly, we find that the phrase "in the actor's own home" does not extend to the area where Higgins was standing. See, also, R.C. 1.42 ("Words and phrases shall be used in context and construed according to rules of grammar and common usage.")
 {¶ 20} Because the officers' testimony, construed in a light most favorable to the prosecution, was sufficient to support Higgins' conviction of carrying a concealed weapon, the trial court did not err in denying his Crim.R. 29 motion for acquittal.
 {¶ 21} Appellant's second assignment of error is therefore overruled.
 {¶ 22} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v.Thompkins (1997), 78 Ohio St.3d 380, 390. When considering an appellant's claim that the conviction is against the weight of the evidence, the reviewing court sits, essentially, as a "`thirteenth juror' and [may] disagree with the fact finder's resolution of the conflicting testimony." Thompkins, supra at 387, quoting Tibbs v. Florida (1982), 547 U.S. 31, 42,72 L.Ed.2d 652, 102 S.Ct. 2211. The reviewing court must examine the entire record, weighing the evidence and considering the credibility of witnesses, while being mindful that credibility generally is an issue for the trier of fact to resolve. State v.Thomas (1982), 70 Ohio St.2d 79, 80. The court may reverse the judgment of conviction if it appears that the fact finder, in resolving conflicts in the evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 23} In his third assignment of error, Higgins argues that his conviction was against the manifest weight of the evidence. He contends that he was on his own property when the police approached and that he was not a threat to anyone. He argues further that various inconsistencies in the officers' testimony (e.g., Officer Lally testified that the suspicious bulge was noticeable under Higgins' shirt; Officer Kirby testified that the bulge was under Higgins' coat) indicate that the witnesses were not credible. Accordingly, he argues, the trial court "lost its way" in convicting him. We disagree.
 {¶ 24} As discussed above, Higgins was not "in his own home" when he was apprehended. Moreover, the burden of proving an affirmative defense rests with the party asserting the defense. Here, Higgins offered no evidence that the weapons were "carried" or "kept ready * * * for any lawful purpose." R.C. 2923.12(D)(3). Finally, our review of the record indicates that the inconsistencies between Officer Lally's and Officer Kirby's testimony were minor and did not affect the officers' credibility sufficiently to undermine confidence in the outcome. Both officers testified that they saw a loaded handgun in Higgins' waistband. They both also testified that he had a loaded shotgun on his porch within 30 feet of where he was standing. In light of this testimony, we find no manifest miscarriage of justice in Higgins' conviction for carrying a concealed weapon.
 {¶ 25} Appellant's third assignment of error is overruled.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Frank D. Celebrezze, Jr., P.J., and James J. Sweeney, J.,concur.
[1] "Curtilage" has been defined as an area "so intimately tied to the home itself that it should be placed under the home's `umbrella' of Fourth Amendment protection." State v.Williamson, Butler App. No. CA2003-02-047, 2004-Ohio-2209, at ¶16, quoting State v. Payne (1995), 104 Ohio App.3d 364. The central inquiry is "whether the area harbors the `intimate activity associated with the sanctity of a man's home and the privacies of life.'" Id.