**[Cite as *State v. Cook*, 2011-Ohio-1776.]**

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | | JUDGES: |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 2010-CA-40 |
| MEGAN COOK | : | 2010-CA-41 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

and

STATE OF OHIO

      Plaintiff-Appellee

-vs-

BILLY J. COOK, III.

      Defendant-Appellant

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal appeal from the Muskingum County Court of Common Pleas, Case No. CR2009-157 & CR2009-158 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | April 8, 2011 |
| APPEARANCES: | |

For Plaintiff-Appellee

For Defendants-Appellants

ROBERT L. SMITH
Assistant Prosecuting Attorney
27 North Fifth Street,Ste. 201
Zanesville, OH  43701

DENNIS G. DAY
330 South High Street
Columbus, OH 43215

*Gwin, P.J.*

{¶1} Defendant-appellants, Billy J. Cook, III and Megan M. Cook, appeal their convictions in the Muskingum County Court of Common Pleas upon the charges of Cultivation of Marijuana, in violation of Ohio Revised Code Section 2925.04(A), a felony of the third degree; and Possession of Marijuana, in violation of Ohio Revised Code Section 2925.11(A), a felony of the third degree. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} During August of 2007, the Muskingum County Sheriff's Department received information from Guernsey-Muskingum Electric Company concerning unusually high electric usage at 10545 Hewitt Road, Nashport, Ohio. The caller advised that usage was so high that the company had to install a transformer with larger capacity in order to serve the customer who was identified to officers as Megan Cook. (Search warrant probable cause affidavit, paragraph 2).

{¶3} On June 24, 2009, Detective Kyle Bolster of the Central Ohio Drug Enforcement Task Force advised the Muskingum County Sheriff's Department that he had received an anonymous complaint that marijuana was being cultivated inside a building on property located at 10545 Hewitt Road, Nashport, Ohio. The caller advised that he had "set the grow up" five (5) years earlier and that as of one (1) week prior to his call to Bolster, the building was full of growing marijuana plants. The caller further advised that the grow operation was maintained by Billy and Megan Cook and that Billy and Megan Cook did not live on the property. (Search warrant probable cause affidavit, paragraph 3).

**{¶4}** On July 2, 2009, three (3) detectives from the Muskingum County Sheriff's Department went to 10545 Hewitt Road, Nashport, Ohio in order to speak with the occupants concerning the complaint. Detective Wilhite testified that, upon arrival, officers traversed a driveway approximately three hundred (300) feet in length. Officers encountered no gates and did not observe any "no trespassing" signs on the property. Upon traveling the entire length of the driveway, officers observed a house and pole barn that was approximately fifty (50) to one hundred (100) feet apart. Officers did not observe the presence of any vehicles. Upon exiting their vehicle, all three officers noticed the odor of green or growing marijuana emanating from a pole barn structure. Officers approached the residence and knocked upon the door but received no answer. Officers noticed that the home appeared to be vacant and under construction. Officers also noticed that a garden hose was running from an outside spigot and into the pole barn. Officers also noticed two (2) five gallon buckets, various plant stakes, pieces of black plastic water line, potting soil, and fertilizer around the building. Finally, they observed two (2) surveillance cameras and two (2) motion detectors which officers knew from experience are often used by individuals engaged in illegal cultivation activities for counter-surveillance purposes. (Search warrant probable cause affidavit, paragraphs 5 and 7).

**{¶5}** After smelling the odor of green or growing marijuana, officers contacted Lt. Fisher and his K-9, Zero. Fisher and Zero, who is certified in the State of Ohio for narcotics sniffing, came to the Hewitt Road address. Upon entering the property, Zero alerted to the presence of narcotics in the pole barn structure. (Search warrant probable cause affidavit, paragraphs 6 and 8).

{¶6} Thereafter, Detective Wilhite prepared an application for a search warrant for 10545 Hewitt Road, Nashport, Ohio, including the residence and pole barn. Judge Jay Vinsel, of the Muskingum County Court approved the application and signed the warrant on July 2, 2009. Upon execution of the warrant, officers seized eighty-seven (87) marijuana plants, grow lights, transformers, chemicals, and other paraphernalia used to cultivate marijuana. Officers also found twelve (12) plastic bags which contained processed marijuana *as* well miscellaneous documents in the-name of Megan and Billy Cook.

{¶7} On August 5, 2009, appellants were indicted by the Muskingum County Grand Jury.

{¶8} On February 8, 2010, appellants filed identical motions to suppress in which each moved the "Court for an order suppressing for use as evidence, any and all items or things found, or observed and/or seized by law enforcement officers or any persons assisting them while executing a search warrant on July 2, 2009, at 10545 Hewitt Road, Nashport, Ohio, as well as any evidence derived directly or indirectly therefrom or connected thereto." These motions came on for oral hearing on February 19, 2010. At the hearing, the appellants called Detective Matt Wilhite to the stand. Upon a review of the testimony and the affidavit filed in support of the application for a search warrant, the trial court denied the motion to suppress.

{¶9} On February 22, 2010, appellants withdrew their prior pleas of "not guilty" and entered pleas of "no contest" to both counts of the Indictment. After hearing the testimony of Detective Matt Wilhite of the Muskingum County Sheriff's Department, Judge Fleegle found the appellants "guilty" of both counts.

{¶10} On July 12, 2010 appellants returned to court for sentencing. At that time, the Court ordered both appellants to serve a one (1) year prison term on each count, said sentences to be served concurrent with one another. In addition, the Court ordered each appellant to pay a fine of five thousand dollars ($5,000.00) and to pay court costs. Finally, the Court ordered that certain items of personal property seized by detectives during the execution of the search warrant be forfeited to the State.

{¶11} Appellants have timely appealed[1] raising an identical assignment for error for our consideration:

{¶12} "I. THE TRIAL COURT ERRED IN OVERRULING APPELLANTS' MOTION TO SUPPRESS EVIDENCE."

Standard of Review

{¶13} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 797 N.E.2d 71, 74, 20030-Ohio-5372 at ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap* (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988; *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long* (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1; *State v. Medcalf* (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court

---

[1] Appellant Megan M. Cook in Muskingum App. No. CT2010-0040, and Appellant Billy J. Cook, III in Muskingum App. No. CT2010-0041. The cases have been consolidated for appeal.

met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539; See, generally, *United States v. Arvizu* (2002), 534 U.S. 266, 122 S.Ct. 744; *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657. That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review. *Ornelas*, supra.  Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

I.

**{¶14}** Appellants' sole assignment of error relates to the propriety of the trial court's overruling of their identical motions to suppress. Subsumed within this generalized objection are five challenges to the trial court's ruling: Specifically, appellants contend that: (1) utility usage information that is nearly two years old should not have been used to corroborate a claim that marijuana was presently being grown; (2) information received from an anonymous informant to support the issuance of a search warrant was void when the reliability of the informant is unknown and the point in time at which the information is provided was unknown; (3) the judge is not permitted to make assumptions relating to the qualifications of law enforcement officers when that information is omitted from the affidavit; (4) the search was invalid because the use of a drug sniffing canine outside of the residence required a search warrant; and (5) a full search of a residence and its curtilage, without physical entry into any buildings, requires a search warrant.

{¶15} In addressing the substance of appellants' assignment of error, we begin with Crim.R. 41, which governs the issuance and execution of search warrants in Ohio. Subsection (C) of the rule reads, in pertinent part:

{¶16} "A warrant shall issue under this rule only on an affidavit or affidavits sworn to before a judge of a court of record and establishing the grounds for issuing the warrant. The affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located. If the judge is satisfied that probable cause for the search exists, he shall issue a warrant identifying the property and naming or describing the person or place to be searched. The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished."

{¶17} In reviewing the affidavit in this case, we are guided by the following instruction by the Ohio Supreme Court: ""[R]eviewing courts may not substitute their own judgment for that of the issuing magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which the reviewing court would issue the search warrant. On the contrary, reviewing courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *State v. George* (1989), 45 Ohio St.3d 325, 330 544 N.E.2d 640, paragraph two of the syllabus; *Illinois v. Gates* (1983), 462 U.S. 213, 238-239, 102 S.Ct. 2317, internal

citations omitted. "'[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * conclud[ing]' that probable cause existed." *State v. George*, supra at 329, 544 N.E.2d 640, citing *Gates*, 462 U.S. at 238-239. See also, *State v. Norman*, Guernsey App. No. 2010-CA-21, 2011-Ohio-568 at ¶ 33.

**{¶18}** In assessing whether a party has met its burden of proof, the Ohio Supreme Court has stated, "[t]he degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Cross v. Ledford* (1954), 161 Ohio St. 469, 477, 120 N.E.2d 118, 123. See also, *Rice v. City of Cleveland* (1944), 144 Ohio St. 299, 58 N.E. 768. "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George* (1989), 45 Ohio St.3d 325, paragraph one of the syllabus, quoting *Illinois v. Gates* (1983), 462 U.S. 213, 238-39. See also, *State v. Norman*, supra at ¶ 38.

**{¶19}** Moreover, evidence obtained by a law enforcement officer acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause will not be barred

by the application of the exclusion rule. See *George*, 45 Ohio St.3d 325 at paragraph three of the syllabus, citing *United States v. Leon* (1984), 468 U.S. 897. Finally, an officer executing a valid warrant may seize an item not described in the warrant if "it was 'immediately apparent' that the item was incriminating." *State v. Waddy*, supra 63 Ohio St.3d at 442, citing *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 466. See also *Horton v. California* (1990), 496 U.S. 128. Keeping in mind the foregoing principles, we will begin by discussing the search conducted on July 2, 2009.

**{¶20}  (1) Utility usage information that is nearly two years old can be relied upon to support a claim that marijuana is presently being grown on the premises.**

**{¶21}** Appellant argues the utility usage information in the case at bar was received on August 28, 2007, nearly two years prior to the issuance of the search warrant. On its face, appellant contends the information concerning utility usage is stale and could not constitute sufficient probable cause upon which the reviewing court should issue the search warrant.

**{¶22}** Appellant cites to only the decision of the Sixth Circuit of United States Court of Appeals in *United States v. Brooks*(2010), 594 F.3d 488 to support his contention. In that case, Mr. Brooks had been indicted for possession with the intent to distribute cocaine base (crack) after police executed a search warrant on his residence and found, among other things, 136.21 grams of crack. Brooks moved to suppress the evidence on the grounds that the affidavit submitted in support of the application for the search warrant was insufficient to give rise to probable cause to search the residence. Specifically, Brooks argued that the majority of the information in the search warrant affidavit was stale and that what information was not stale was insufficient to give rise

to probable cause to search the residence. The district court agreed and suppressed all of the evidence obtained from the search. The government appealed that ruling. Although the Court of Appeals for the Sixth Circuit agreed with the district court that much of the information set forth in the affidavit was stale, the Court found that the non-stale information was, on its own, sufficient to give rise to probable cause to believe that contraband or evidence of a crime would be present in Brooks's residence. It therefore reversed the judgment of the district court and remanded the case for further proceedings.

{¶23} In reviewing the facts, the Sixth Circuit Court of Appeals noted whether information is stale depends on the inherent nature of the crime. Whether information is stale in the context of a search warrant turns on several factors, such as "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [and] the place to be searched (mere criminal forum of convenience or secure operational base?)." *United States v. Hammond*, 351 F.3d 765, 771-72 (6th Cir. 2003) (quoting *United States v. Greene*, 250 F.3d 471, 480-81 (6th Cir. 2001)). In the context of drug crimes, information goes stale very quickly "because drugs are usually sold and consumed in a prompt fashion." *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009). *Brooks*, 594 F.3d at 493.

{¶24} However, *Brooks* differs from appellants' case in one very important respect. The *Brooks* case concerned allegations of a drug sale operation involving crack cocaine.  In contrast, appellants' cases concern an allegation of a grow operation involving marihuana. This distinction has been recognized by the courts as allowing for

the use of older information. In fact, the Sixth Circuit Court of Appeals itself has recognized this distinction.

**{¶25}** In *United State v. Thomas* (1993), 9 F.3d 110, the Court observed, "Different offenses have different periods of time in which the government can act on information before it is considered stale. A marijuana growing operation, in which the marijuana must grow to maturity and then be harvested, has a longer lifetime of relevant data than a cocaine distribution operation in which all sales may be consummated within hours of delivery. See *United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991) (nearly two-year old information on marijuana growing operation upheld, staleness evaluated in light of particular facts of case and nature of criminal activity and property sought); *United States v. Dozier*, 844, F.2d 701, 707 (9th Cir. 1988) (marijuana cultivation is long-term crime; even "substantial" time lapse not controlling on staleness)."

**{¶26}** Further the *Brooks* court recognized that stale information can nevertheless be properly considered by the magistrate for purposes of flavoring or strengthening other, non-stale information in an affidavit.  594 F.3d at n.4.   See also *United States v. Spikes* (6th Cir 1998), 153 F.3d 913, 924; *State v. Bernhard*, Greene App. No. 2004 CA 6, 2005-Ohio-1052 at ¶10.

**{¶27}     (2) Anonymous Tip**

**{¶28}** Appellant next argues that the information received by the affiant constituted an anonymous tip received some time before June 25, 2009.

**{¶29}** We are not persuaded by appellants' reliance on upon *Sgro v. United States* (1932), 287 U.S. 206, 53 S.Ct. 138. In S*gro*, the United States Supreme Court

construed the National Prohibition Act's authorization for law enforcement agents to obtain warrants to search for intoxicating liquor. 287 U.S. 206, 53 S.Ct. 138. The Act provided that any such warrant must be executed and returned within ten days of its date of issuance or it would be void. Id. at 209-10, 53 S.Ct. 138. Agents obtained a warrant but failed to execute it within the prescribed ten-day period. Id. They returned to the issuing Commissioner three weeks later and the Commissioner simply changed the date of the old warrant and reissued it without requiring any additional evidence that probable cause still existed. Id. at 208, 53 S.Ct. 138.

{¶30} The Court refused to approve this procedure, noting that the Fourth Amendment requires that facts constituting probable cause must be "so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." Id. at 210, 53 S.Ct. 138. It is in light of this constitutionally required temporal proximity, the Court said, that "we must read the [statutory] provision which in explicit terms makes a warrant void unless executed within ten days after its date. That period marks the permitted duration of the proceeding in which the warrant is issued." Id. at 211, 53 S.Ct. 138. In effect, the Court held that the probable cause that must exist when the warrant is issued must also exist when the warrant is executed, but its existence cannot be presumed beyond the period provided in the statute for execution. See, *State v. Miguel* (2004), 209 Ariz 338, 101 P.2d 214 at ¶13.

{¶31} Various federal circuit courts, as reviewed in *State v. Marko* (1973), 36 Ohio App.2d 114, 118-119, 303 N.E.2d 94, have held that there is no arbitrary time limit on how old information contained in an affidavit may be, so long as there are sufficient facts to justify a conclusion that the subject contraband is probably on the

person or premises to be searched at the time the warrant is issued. See *United States v. Johnson* (C.A. 10, 1972), 461 F.2d 285; *Durham v. United States* (C.A. 9, 1968), 403 F.2d 190; *United States v. Guinn* (C.A. 5, 1972), 454 F.2d 29, certiorari denied (1972), 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685; *Schoeneman v. United States* (C.A.D.C., 1963), 317 F.2d 173. See also, *State v. Yanowitz* (1980), 67 Ohio App.2d 141, 147, 426 N.E.2d 190, 193.

**{¶32}** In *U.S. v. Dennis* (C.A.8, 1980), 625 F.2d 782, the Eighth Circuit stated:

**{¶33}** "Probable cause must exist at the time the warrant is issued. If past circumstances would have justified the search, there must be reason to believe that those circumstances still exist at the time of the search." *Dennis* at 792.

**{¶34}** Regarding the issue of whether past reports of criminal activity can be used to support a search warrant, the Eighth District has stated "[i]t is well-settled that information about criminal activity at an earlier unspecified time may combine with factually connected, recent, time-specific information to provide substantial basis for the conclusion that criminal activity described in an affidavit is sufficiently close in time to the search warrant application." (Citations omitted.) *U.S. v. Day* (C.A.8, 1991), 949 F.2d 973, 978.

**{¶35}** In the appellants' case, the information provided by the anonymous tip was "rich" in relevant detail. It provided the address and the names of the residents; stated that the anonymous informant set up a large marihuana grow operation approximately five years ago in the garage on the property; that the informant had visited the property one week ago and observed the garage was filled with growing

marihuana plants; that the appellants did not live at the residence but were there approximately eight hours a day every day.

{¶36} In Detective Wilhite's testimony he stated that Detective Boerstler had indicted he had received the anonymous tip just prior to making contact with Detective Wilhite on June 24, 2009. (T. at 7). However, Detective Wilhite admitted that he did not include the information concerning the time that Detective Boerstler received the anonymous tip in his affidavit in support of his request for a search warrant. (Id. at 7-8).

{¶37} Although the tip standing alone may have been insufficient, stale information can nevertheless be properly considered by the magistrate for purposes of flavoring or strengthening other, non-stale information in an affidavit as we have previously noted.

{¶38} (3) **Must the affidavit contain a foundation that supports the qualifications for the officer to recognize the odor of marihuana?**

{¶39} Appellants next contend that the search warrant was invalid because the affiant did not list his qualifications to detect marijuana through the sense of smell.

{¶40} The essential test for determining whether the detection of an odor establishes sufficient probable cause for a search warrant was set forth by the Supreme Court in *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). In *Johnson*, the Supreme Court found that a magistrate may rely on the detection of an odor to establish probable cause for a search "[if] the presence of the odor is testified to before [the] magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinct to identify a forbidden substance." Id. at 14.  See, also *State v. Moore* (2000), 90 Ohio St. 3d 47, 734 N.E. 2d 804.

**{¶41}** In *Moore*, supra the Ohio Supreme Court noted that "[t]he United States Supreme Court has long acknowledged that odors may be persuasive evidence to justify the issuance of a search warrant." Id., citing *Johnson v. United States* (1948), 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. The *Moore* court emphasized that its holding was based on the totality of the circumstances, which in that instance, justified the warrantless search of the defendant's person "[b]ecause marijuana and other narcotics are easily and quickly hidden or destroyed, [and] a warrantless search may be justified to preserve evidence." Id. at 52, 734 N.E. 2d 804. The court reasoned that those are "compelling reasons" or "exceptional circumstances" that would "justify an intrusion without a warrant." Id. We reached the same conclusion that a warrantless search of a suspect's motor vehicle was unreasonable based solely upon the smell of marihuana without evidence that the officer was qualified to recognize the odor. *State v. Birdsong*, Stark App. No. 2008 CA 00221, 2009-Ohio-1859.

**{¶42}** In the case at bar, the affidavit stated that the officer was a veteran law enforcement officer with over three and one half (31/2) years of experience and training in the area of narcotics investigation. The affiant stated that he has participated in over two hundred (200) such investigations and executed or authored over fifty (50) narcotics search warrants. During the hearing on appellants' Motions to Suppress, Detective Wilhite testified as follows,

**{¶43}** "Q. And how are you able to - - to distinguish marijuana from other plants?

**{¶44}** "[Detective Wilhite]:  Because I've been employed at the sheriff's office at this time for a little over nine years. During that time, three-and-a-half to four years as a narcotics detective. Throughout the time being a narcotics detective, I've been exposed

to marijuana on numerous occasions.  On one occasion I had the opportunity to pull over 5,000 growing marijuana plants from one marijuana grow.

{¶45} "Q. I'm not sure, when you answered my question a couple seconds ago, whether you distinguished whether the smell was green and growing, or whether it was burning?

{¶46} "[Detective Wilhite]:  Yes, I can distinguish between the burning smell and the green and growing.  The green and growing - - because I smelled both burning marijuana and the green and growing.  More specifically, the green and growing marijuana due to tearing down of several thousands of growing marijuana plants.

{¶47} "Q. And which - - which did you smell on this occasion?

{¶48} "[Detective Wilhite]: I smelled green and growing marijuana."

{¶49} (T. at 14-15).

{¶50} Thus the record in the case at bar contains ample evidence that the affiant, Detective Wilhite, is a  person  qualified by his training and experience to know and identify the odor of marijuana and it is a distinctive odor that undoubtedly identifies a forbidden substance. In the case at bar, appellants do not contend that the affidavit was false or misleading as to the affiant's ability to detect the smell of marijuana.

{¶51} We must be mindful of the " * * * elementary proposition of law that an appellant, in order to secure reversal of a judgment against him, must not only show some error but must also show that that error was prejudicial to him." See *Smith v. Flesher* ( 1967), 12 Ohio St. 2d 107, 233 N.E. 2d 137; *State v. Stanton*(1968), 15 Ohio St.2d 215, 217, 239 N.E.2d 92,94; *Wachovia Mtg. Corp. v Aleshire*, Licking App. No. 09 CA 4, 2009-Ohio-5097 at ¶16. See, also, App.R. 12(D).

{¶52} In the case at bar, appellant has not made any argument relative to the prejudicial effect of the issuance of the warrant based upon Detective Wilhite's failure to specifically include in the affidavit his ability and qualifications to identify the odor of marijuana.

**{¶53} (4) The use of a drug sniffing canine at a residence does not require a search warrant as long as the sniffing canine is legally present at its vantage point when its sense is aroused.**

{¶54} The appellants next argue that the trial court erred in denying their motions to suppress because the dog sniff while on the premises constituted an illegal search under the Fourth Amendment and, thus, could not be used as evidence of probable cause for the search warrant.

{¶55} In support of his contention that a dog sniff is a search, the appellant cites *State v. Rabb,* 920 So. 2d 1175 (Fla. 4th DCA 2006), *review denied,* 933 So.2d 522 (Fla.2006), *cert. denied,* 549 U.S. 1052, 127 S.Ct. 665, 166 L.Ed.2d 513 (2006), in which the Fourth District held that a dog sniff at the front door of a house violated the Fourth Amendment. Such reliance, however, is misplaced as *State v. Jardines,* --- So. 3d ----, 2008 WL 4643082, 33 Fla. L. Weekly D2455 (Fla. 3d DCA Oct. 22, 2008), held that *Rabb* was wrongly decided. *Accord Stabler v. State,* 990 So.2d 1258 (Fla. 1st DCA 2008).

{¶56} In determining that *Rabb* had been wrongly decided, the Court in *Jardines*, supra noted that in *Illinois v. Caballes,* 543 U.S. 405, 408, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005), the United States Supreme Court expressly rejected the notion that a "dog sniff itself infringed [a] ... constitutionally protected interest in privacy." In doing so, the

Court confirmed that because a dog sniff detects only contraband, and because no one has a "legitimate" privacy interest in contraband, a dog sniff is not a search under the Fourth Amendment. In *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the United States Supreme Court treated a canine sniff by a well-trained narcotics-detection dog as "*sui generis* " because it "discloses only the presence or absence of narcotics, a contraband item." Id*.,* at 707, 103 S.Ct. 2637; *see also Indianapolis v. Edmond,* 531 U.S. 32, 40, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000). Respondent likewise concedes that "drug sniffs are designed, and if properly conducted are generally likely, to reveal only the presence of contraband." *Caballes*, 543 U.S. at 408-9, 125 S.Ct. 834 (some citations omitted). The court in *Jardines* further noted,

{¶57} "Based on this reasoning, we reject the notion that *Kyllo v. United States*, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), relied on in *Rabb,* makes a dog's detection of contraband while standing on a front porch open to the public, a search which compromises a legitimate privacy interest. *Kyllo* involved the use of a mechanical device which detected heat radiating from the walls of a home. There, the court was concerned with the use of constantly improving technological devices that, from outside a home, could intrude into the home and detect legitimate as well as illegal activity going on inside. *Kyllo*, 533 U.S. at 40, 121 S.Ct. 2038 ("Where, as here, the government uses a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is a 'search' and presumptively unreasonable without a warrant.").

**{¶58}** "A dog's nose is not, however, a 'device,' nor is it improved by technology. Dogs have been used to detect scents for centuries all without modification or 'improvement' to their noses. That, perhaps, is why the Supreme Court describes them as '*sui generis*,' in *Place*. *Place*, 462 U.S. at 707, 103 S.Ct. 2637. Moreover, and unlike the thermal imaging device at issue in *Kyllo*, a dog is trained to detect only illegal activity or contraband. It does not indiscriminately detect legal activity." *State v. Jardines,* supra at 4-5.

**{¶59}** Finally, the *Jardines* court noted, "As recently observed in *People v. Jones,* 279 Mich.App. 86, 755 N.W.2d 224, 228 (2008), a majority of federal circuit courts have viewed the *Place* Court's holding as generally categorizing canine sniffs as non-searches. See, e.g., *United States v. Reed,* 141 F.3d 644, 648 (6th Cir.1998); see also *United States v. Brock,* 417 F.3d 692 (7th Cir. 2005); *United States v. Roby,* 122 F.3d 1120 (8th Cir. 1997); *United States v. Vasquez,* 909 F.2d 235 (7th Cir. 1990). Likewise, "the vast majority of state courts considering canine sniffs have recognized that a canine sniff is not a Fourth Amendment search. *People v. Jones,* 755 N.W.2d at 228."*Jardines*, supra 9 So.3d at 6(Footnotes omitted).

**{¶60}** We agree with the court's conclusion in *Jardines*, "persuasive authority convinces us that a canine sniff is not a search within the meaning of the Fourth Amendment as long as the sniffing canine is legally present at its vantage point when its sense is aroused. *Jardines*, supra 9 So.3d at 6. (Quoting *People v. Jones*, 755 N.W.2d at 228).

**{¶61} (5) Whether a full search of the exterior of an unoccupied residence and its curtilage, without physical entry into any buildings, requires a search warrant.**

{¶62} Appellants next contend that the officers' actions in going onto the premises constituted an unlawful, warrantless search and seizure because the barn and the unoccupied residence required a search warrant. Appellant makes no specific factual demonstration based upon the record that the officers made any observation from a place that they could not lawfully enter upon. See, App.R. 16(A)(7); *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees,* 108 Ohio St.3d 288, 2006-Ohio-903, at ¶ 13; *See also,* State *v. Davis*, Licking App. No. 2007-CA-00104, 2008-Ohio-2418 at ¶ 91.

{¶63} The Fourth Amendment's protection against warrantless home entries extends to the "curtilage" of an individual's home. *United States v. Dunn* (1987), 480 U.S. 294, 300, 107 S.Ct. 1134, 1139, 94 L.Ed. 2d 326. "Curtilage" has been defined as an area "'so intimately tied to the home itself that it should be placed under the home's "umbrella" of Fourth Amendment protection.'" *State v. Payne* (1995), 104 Ohio App.3d 364, 368, 662 N.E.2d 60, quoting Dunn, 480 U.S. at 301, 107 S.Ct. at 1140. The central inquiry is whether the area harbors the intimate activity associated with the sanctity of a man's home and the privacies of life." ' " *Dunn*, 480 U.S. at 300, 107 S.Ct. at 1139, quoting *Oliver v. United States* (1984), 466 U.S. 170, 180, 104 S.Ct. 1735, 1742, 80 L.Ed.2d 214.(Internal quotation marks omitted).

{¶64} *Dunn* set forth four factors for consideration in determining whether a certain area outside the home itself should be treated as curtilage: (1) the proximity of

the area claimed to be curtilage to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by. 480 U.S. at 301, 107 S.Ct. at 1139.

**{¶65}** Thus, it has been held that the only areas of the curtilage where officers may go are those impliedly open to the public. This area includes walkways, driveways, or access routes leading to the residence. *State v. Birdsall*, Williams App. No. WM-09-016, 2010-Ohio-2382 at ¶ 13. (Citing *State v. Dyreson* (Wash.App.2001), 104 Wash.App. 703, 17 P.3d 668; *State v. Pacheco* (Mo.App.2003), 101 S.W.3d 913, 918; *State v. Johnson* (N.J. 2002), 171 N.J. 192, 793 A.2d 619). The guiding principal is that a police officer on legitimate business may go where any "reasonably respectful citizen" may go. *Birdsall,* supra; *Dyreson*, supra; see, also, *State v. Tanner* (Mar. 10, 1995), 4th Dist. No. 94CA2006. Police are privileged to go upon private property when in the proper exercise of their duties. See *State v. Chapman* (1994), 97 Ohio App.3d 687, 647 N.E.2d 504.

**{¶66}** Moreover, the porch of a residence has been held to be a public place for purposes of Fourth Amendment analysis. *State v. Swonger*, Franklin App. No. 09AP-1166, 2010-Ohio-4995 at ¶ 15. [Citing *State v. Lomack* (Mar. 11, 1999), 10th Dist. No. 98AP-708 (finding that the defendant was in a public place at the time of his attempted arrest as he was "standing on his porch"), citing *United States v. Santana* (1976), 427 U.S. 38, 42, 96 S.Ct. 2406, 2410, 49 L.Ed.2d 300; *State v. Higgins,* 8th Dist. No. 86241, 2006-Ohio-178 (a residence's porch is not within the curtilage of a home so as to be subject to Fourth Amendment protections); *State v. Williamson,* 12th Dist. No.

CA2003-02-047, 2004-Ohio-2209 (a residence's porch is not within the curtilage of a home); *State v. Eberhart,* 1st Dist. No. C-010346, 2002-Ohio-1140 (a porch may be considered a public place even though it is on the homeowner's property)].

**{¶67}** In the case at bar, Detective Wilhite and the other officers were permitted to go the location, drive into the driveway and walk up to the front door for the purpose of talking to the occupants about the complaints that they were growing marijuana in the garage. Nothing in either the affidavit or the record indicates that the officers entered inside the house or the barn.  No photographs of the area in question were entered into evidence. Appellant did not present any evidence to establish that there were "No Trespassing" signs anywhere on the property.

**{¶68}**  Appellants' reliance upon *State v. Woljevach,* 160 Ohio App.3d 757, 828 N.E.2d 1015 is not persuasive.  As we previously have noted Detective Wilhite was qualified to detect the odor of raw marijuana. Further, *Woljevach* is also distinguishable because we have found a canine sniff is not a search within the meaning of the Fourth Amendment as long as the sniffing canine is legally present at its vantage point when its sense is aroused.  In the case at bar, the affidavit established the qualifications of the K-9 to detect the odor of marijuana. The K-9 was deployed in the driveway and thus was legally upon the property.

Conclusion

**{¶69}** Based upon the above, we find the trial court properly overruled the appellants' motions to suppress. Appellants' sole assignment of error, including each subpart, is overruled.

**{¶70}** For the foregoing reasons, the judgment of the Muskingum County Court of Common Pleas, Muskingum County, Ohio, is hereby affirmed.

By Gwin, P.J., and

Wise, J., concur;

Hoffman, J., concurs

separately

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JOHN W. WISE

WSG:clw 0329

*Hoffman, J., concurring*

**{¶71}** I concur in the majority's overall disposition of Appellant's sole assignment of error and specifically concur in its analysis and disposition of subsections (2), (4) and (5) of the opinion.

**{¶72}** I further concur in the majority's conclusion as to subsections (1) and (3).

**{¶73}** With respect to subsection (1), while I disagree with the conclusion the utility usage information is not stale to support the claim marijuana was presently being grown on the premises, I do agree it can be properly considered for purposes of flavoring or strengthening other, non-stale information in an affidavit. Specifically as applied to this case, the utility usage information strengthens the reliability of the anonymous informant's tip.

**{¶74}** As to subsection (3), I also agree with the majority's conclusion but do so limiting my consideration only to the information regarding the affiant's qualifications as set forth in the affidavit. As the attack is on the sufficiency of the affidavit to support issuance of the search warrant, the additional evidence of the officer's training and experience produced during the motion to suppress goes beyond the four corners of the affidavit. As such, I find it does not bear on the issue raised.

_____
HON. WILLIAM B. HOFFMAN

[Cite as *State v. Cook*, 2011-Ohio-1776.]

IN THE COURT OF APPEALS FOR MUSKINGUM COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                       :

              Plaintiff-Appellee      :

                       :

-vs-                         :      JUDGMENT ENTRY

                       :

MEGAN COOK                 :

                       :

           Defendant-Appellant  :      CASE NO.      2010-CA-40
and                                                  2010-CA-41

STATE OF OHIO

              Plaintiff-Appellee

-vs-

BILLY J. COOK, III.

              Defendant-Appellant

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Muskingum County Court of Common Pleas, Muskingum County, Ohio, is hereby affirmed. Costs to appellants.

 

_____

HON. W. SCOTT GWIN

_____

HON. WILLIAM B. HOFFMAN

_____

HON. JOHN W. WISE