[Cite as *State v. Brooks*, 2013-Ohio-3505.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. Sheila G. Farmer, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2012 CA 0071 |
| DEMONDRAY BROOKS | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
                             Pleas, Case No.  2011 CR 0856H


JUDGMENT:                    Affirmed in Part; Reversed in Part and
                             Remanded


DATE OF JUDGMENT ENTRY:      August 14, 2013


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JAMES J. MAYER, JR.                   DAVID HOMER
PROSECUTING ATTORNEY                  13 Park Avenue West
JILL M. COCHRAN                       Suite 609
ASSISTANT PROSECUTOR                  Mansfield, Ohio  44902
38 South Park Street
Mansfield, Ohio  44902

*Wise, J.*

{¶1} Appellant Demondray Brooks appeals his convictions and sentences on several felony counts, including drug trafficking and possession, in the Court of Common Pleas, Richland County.  Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2} On the evening of November 28, 2011, Mansfield police officers were dispatched to a reported domestic disturbance at a house on Glenwood Heights Avenue. Officer Sarah Mosier arrived in the area first; she waited briefly for backup assistance. She and Officer Dave Johnson then went to the front door, where they were met by a female resident, Ariel Hall. The officers noticed that Ariel had a black eye, which she stated had been caused the day before.  Ms. Hall also advised that a man she called "Dray," who sometimes lived in the residence, was present. Shortly thereafter, a man carrying a handgun started down the interior stairs from the second floor, but then ran back upstairs. As further discussed infra, the residence was further searched, leading to the discovery of drugs and other contraband items.

{¶3} On January 6, 2012, subsequent to a preliminary hearing in the Mansfield Municipal Court, appellant was indicted by the Richland County Grand Jury on three counts of having weapons while under a disability (R.C. 2923.13(A)(3) – Counts I, II, and IX), trafficking in drugs (R.C. 2925.03(A)(2) - Count III), domestic violence (R.C. 2919.25(A) - Count IV), receiving stolen property (R.C. 2913.51(A) – Count V), two counts of aggravated menacing (R.C. 2903.21(A) – Counts VI and VII), and possession of heroin (R.C. 2925.11(A)) – Count VIII).

{¶4} Appellant initially entered pleas of not guilty to all of the above counts.

**{¶5}** Appellant filed a motion to suppress on February 23, 2012. At that time, appellant also requested a transcript of the preliminary hearing.[1] Said motion was heard by the trial court on March 30, 2012 and April 11, 2012.

**{¶6}** On April 13, 2012, the trial court overruled the motion to suppress.

**{¶7}** In a separate action (case no. 2012 CR 0023), Ariel Hall, the victim of the domestic violence offense, was indicted for perjury after she gave conflicting accounts regarding the perpetrator. She was arraigned on January 24, 2012; however, the case was dismissed on the prosecutor's motion on April 17, 2012 after Hall had submitted a proffer against appellant.

**{¶8}** Appellant's case proceeded to a jury trial on July 23 and 24, 2012. Appellant was thereafter found guilty by the jury on all charges, except that the jury could not agree on a verdict on the count of receiving stolen property (Count V), which was thereafter dismissed.

**{¶9}** On August 1, 2012, the trial court sentenced appellant as follows: Count I, II, and IX, third degree felonies, three years, nine months, and three years, respectively, to be served concurrently; Count VI and VII, first degree misdemeanors, six months, concurrent to each other and the above three counts; Count III, a fourth degree felony, twelve months, consecutive to an unstated sentence for Count IV, a fourth degree felony, and consecutive to nine months on Count VIII, a fourth degree felony. Counts III, IV, and VIII were also ordered to be served consecutive to Count I. In total, appellant received a sentence of four years and nine months in prison.

---

[1] Ms. Hall purportedly had testified at the preliminary hearing that the person in her home was a person named "Bingo" and that she had misidentified "Bingo" as "Dray" to the police, causing them to believe that the person they saw was appellant. The preliminary hearing transcript is not included in the record before us.

{¶10} On August 3, 2012, appellant was ordered to be granted credit for 255 days of incarceration in the Richland County Jail.

{¶11} Appellant filed a notice of appeal on August 13, 2012. He herein raises the following three Assignments of Error:

{¶12} "I. THE TRIAL COURT ERRED PREJUDICIALLY BY OVERRULING THE DEFENDANT'S MOTION TO SUPPRESS WITHOUT CONSIDERING THE DEFENDANT'S WITNESS.

{¶13} "II. THE SENTENCE IS CONTRARY TO LAW WHERE THE CONSECUTIVE SENTENCES FOR TRAFFICKING IN DRUGS AND POSSESSION OF HEROIN WERE ALLIED OFFENSES OF SIMILAR IMPORT.

{¶14} "III. THE SENTENCE FOR COUNT IV IS VOID."

I.

{¶15} In his First Assignment of Error, appellant contends the trial court erred in overruling his motion to suppress. We disagree.

{¶16} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this third type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State*

*v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N .E.2d 726. As a general rule, "determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." *Ornelas v. U.S.* (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911.

{¶17} The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures * * *." The United States Supreme Court has held that " '[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' " (Brackets sic.) *Payton v. New York* (1980), 445 U.S. 573, 589-590, 100 S.Ct. 1371, 63 L.Ed.2d 639, quoting *Silverman v. United States* (1961), 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734. The burden is upon the state to overcome the presumption that warrantless searches of homes are per se unreasonable by demonstrating that the search fell within one of the well-recognized exceptions to the warrant requirement. *State v. Kessler* (1978), 53 Ohio St.2d 204, 207, 7 O.O.3d 375, 373 N.E.2d 1252. The doctrine of exigent circumstances is one of these judicially recognized exceptions to the search warrant requirement. *See, e.g., State v. Akron Airport Post 8975* (1985), 19 Ohio St.3d 49, 51, 482 N.E.2d 606. "Police officers, as officers of the peace, are charged with the duty to prevent crime, 'preserve the peace,' and 'protect persons and property.' " *State v. Hyde* (1971), 26 Ohio App. 2d 32,  33, 268 N.E.2d 820, citing R.C. 737.11. Courts weigh the totality of the circumstances as to whether it was reasonable for an officer to believe that someone inside a residence was in need of immediate aid. *See State v. Morris* (Nov. 29, 1989), Montgomery App.No. 10992, 1989 WL 145175. Exigent

circumstances generally must include the necessity for immediate action that will "protect or preserve life or avoid serious injury." *See Mincey v. Arizona,* 437 U.S. 385, 392-393, 57 L. Ed. 2d 290, 300, 98 S. Ct. 2408 (1978). The emergency justifies the warrantless entry, and, while lawfully present, the police may seize evidence in plain view. *See Thompson v. Louisiana,* 469 U.S. 17, 10 S.Ct. 409, 83 L.Ed2d 246 (1984); *State v. Buzzard,* 112 Ohio St.3d 451, 2007-Ohio-373, ¶ 16.

{¶18} As an initial matter, we note the State responds herein that there may be a question of appellant's standing to raise issues of the legality of the search, based on testimony as to how often he stayed at Ms. Hall's house. However, this issue was not addressed by the trial court, and we find it is not necessary to reach it in the present appeal.

{¶19} The search in the case sub judice essentially consisted of two phases: the officers' initial entry into the residence, followed by the consented search *after* the police discovery of guns under a mattress, as well as an open lockbox in one of the bedrooms with a gun, drug paraphernalia, a digital scale, and what appeared to be heroin inside. We will herein focus on the first phase.

{¶20} The record indicates that after Officer Johnson joined Officer Mosier on the scene, both officers approached the front door to 108 Glenwood Heights and knocked. No one immediately answered the door, but Officer Mosier could hear small children inside. A few minutes later, the door was answered by Ariel Hall, who had a severely bruised and blackened eye. Ms. Hall would only speak in a whisper. The officers both testified to smelling marijuana while they were standing in the entrance to the home. When asked if there were other people in the house, Ms. Hall was somewhat

evasive but eventually indicated that her children and "Dray" were inside. Ms. Hall did not invite the officers inside. Ms. Hall later testified that she told the officers several times to leave and that had only called the police station to ask a question about whether she could press charges against someone for previously causing injury to her.

{¶21} A few minutes thereafter, appellant descended the stairs with a firearm in hand, which he pointed at the officers. Officer Mosier did not initially see appellant come down the stairs, but she heard Officer Johnson yell "gun." She then also saw appellant on the stairs. The officers did not enter the home immediately, but waited for more backup before entering. Officer Mosier went around the back of the house in case someone tried to flee. She heard what sounded like an individual jumping out of the window, not sure whether the person who fled the home was in fact appellant or someone else. She did not pursue the subject. Because Officer Mosier did not get a positive ID, and because Ms. Hall had been less than forthcoming with information, the officers were unsure if it had been appellant who had fled or if there were other dangerous persons in the house.

{¶22} Ms. Hall took the children to her room and grabbed a large kitchen knife that she kept by the bed, apparently scared that appellant would return. Officer Mosier then asked Ms. Hall to get the children away from the scene, to a safe place, which she did. Ms. Hall testified that while she was present, the officers were clearly looking for other people in the house, by searching in closets and under beds. In the bedroom described as belonging to appellant, the police located an open lockbox in plain view on the bed with a silver gun, drug paraphernalia, a digital scale and bindles of what appeared to be heroin. Two additional guns, including one similar to the one appellant

was carrying when he came down the stairs, were located between a mattress and a box spring in a bedroom on the east side of the residence. After Ms. Hall had taken the children to a safe place and returned to her home, she signed a consent-to-search form. However, the guns and the drugs at issue were found before the consent form was signed.

{¶23} Thus, the situation presented is that officers responding to a domestic disturbance call were faced with an armed man inside the house, a scared potential victim with children, and someone, who may or may not have been appellant, escaping out a window. The belief that an armed person might be still found within the home at that point was reasonable. Even after Ms. Hall had taken the children to a neighbor and returned, had the gunman still been in the house, a decision by the officers to seek a warrant would likely have left Ms. Hall in danger. The evidence was all found during the initial sweep of the home for persons or additional occupants. Considering the totality of the circumstances, we find exigent circumstances existed regarding the safety of anyone else in the home and the officers themselves; the warrantless entry and limited search were thus justified. Accordingly, we hold the trial court did not err in denying the motion to suppress the items seized from the open lockbox during the search of the residence under the facts and circumstances of this case.

{¶24} Appellant's First Assignment of Error is overruled.

II.

{¶25} In his Second Assignment of Error, appellant argues the trial court erred in convicting and sentencing him on both trafficking in drugs and possession of heroin, based on the same seized quantity of drugs. We agree.

**{¶26}** Appellant herein was sentenced to nine months in prison for trafficking in drugs (R.C. 2925.03(A)(2)), a fourth degree felony, consecutive with nine months in prison for possession of heroin (R.C. 2925.11(A)), also a felony of the fourth degree. It is undisputed that both counts were based on the same ten packages of heroin, and that the trafficking count was based on the fact that the drugs were packaged for distribution in multiple units, not based on any act of distributing.

**{¶27}** R.C. 2941.25 states as follows:

**{¶28}** "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

**{¶29}** "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

**{¶30}** The State herein concedes that the two charges at issue are allied offenses under the facts and circumstances presented. Applying the analysis set forth by the Ohio Supreme Court in *State v. Johnson,* 128 Ohio St.3d 153, 942 N.E.2d 1061, 2010–Ohio–6314, we find reversible error in the trial court's failure to merge the offense of trafficking in drugs (R.C. 2925.03(A)(2)) with possession of heroin (R.C. 2925.11(A)) under the facts of this case. *Cf. State v. Goodson*, Cuyahoga App.No. 94954, 2011-Ohio-5820, ¶ 13. The matter sub judice will be remanded to the trial court to review

merger of these two offenses as provided by the Ohio Supreme Court in *State v. Whitfield,* 124 Ohio St.3d 319, 922 N.E.2d 182, 2010–Ohio–2.

**{¶31}** Appellant's Second Assignment of Error is sustained.

III.

**{¶32}** In his Third Assignment of Error, appellant apparently seeks a declaration from this Court that the sentence based on Count IV is "void."

**{¶33}** Article IV, Section 3(B)(2) of the Ohio Constitution provides that courts of appeals have "such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district." According to the State, on September 19, 2012, after appellant filed his notice of appeal, the trial court issued a nunc pro tunc entry correcting a clerical error of omitting the sentence for Count IV that occurred in the initial sentencing entry. The new sentencing entry purportedly indicates that appellant was sentenced to one year on Count IV to run consecutively to Counts I, III, and VIII, which appears to reflect the oral sentence that was given to appellant on the record at the sentencing hearing. *See* Trial Tr. at 317. However, this post-appeal clerical action by the trial court is not technically part of the record before us. We find the proper remedy under these circumstances is to remand the sentencing entry as to Count IV.

**{¶34}** Appellant's request in the Third Assignment of Error to have any Count IV sentence declared void is accordingly denied; however, in the interest of justice the matter will be remanded solely for the trial court to review the clerical aspects of its decision as to Count IV.

{¶35} For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed in part, reversed in part, and remanded for further proceedings concerning allied offenses and for a clerical review of its sentence as to Count IV of the indictment.


By: Wise, J.

Gwin, P. J., and

Farmer, J., concur.


_____

HON. JOHN W. WISE


_____

HON. W. SCOTT GWIN


_____

HON. SHEILA G. FARMER

JWW/d 0730

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO                              :
                                          :
    Plaintiff-Appellee            :
                                          :
-vs-                                      :               JUDGMENT ENTRY
                                          :
DEMONDRAY BROOKS                          :
                                          :
    Defendant-Appellant           :               Case No. 2012 CA 0071


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

Costs to be split evenly between Appellant and the State.


_____
HON. JOHN W. WISE


_____
HON. W. SCOTT GWIN


_____
HON. SHEILA G. FARMER