[Cite as *State v. Methvin*, 2014-Ohio-590.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 13CA44 |
| | : | |
| TIMMOTHY C. METHVIN | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Richland County Court
                             of Common Pleas Case No. 2012 CR
                             0496 H



JUDGMENT:                    AFFIRMED




DATE OF JUDGMENT ENTRY:      February 10, 2014




APPEARANCES:

For Plaintiff-Appellee:                For Defendant-Appellant:

JAMES J. MAYER, JR.                    JEFFREY P. UHRICH
RICHLAND CO. PROSECUTOR                P.O. Box 1977
JOHN C. NIEFT                          Westerville, OH 43086
38 South Park St.
Mansfield, OH 44902

*Delaney, J.*

{¶1}   Appellant Timmothy C. Methvin appeals from the May 10, 2013 Judgment Entry: Finding on a No Contest Plea entered in the Richland County Court of Common Pleas.  Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2}   This case arose on August 2, 2012, around 6:00 p.m. when officers of the Mansfield City Police Department arrive at 253 Superior Street for a "well-being check" on a resident.  The aunt of Abigail Dooley called police to report she received a suspicious text message from Dooley and asked them to check to make sure she was all right.

{¶3}   As Ptl. Webb and Sgt. Bond arrived on the scene, they observed a woman later identified as Dooley exiting the house.  When she noticed the officers, she quickly closed and locked the door behind her.  Webb and Bond approached and told Dooley someone said she needed help.  She responded she just wanted to leave and get something to eat.  The officers observed blood on Dooley and found it unusual she was wearing a sweater despite the heat of the day.  They asked her to remove her sweater, which she did, revealing a cut and blood on her arm.  Dooley said she cut herself earlier.  The officers asked her a series of questions to determine whether she was a danger to herself.

{¶4}   Police asked if anyone else was in the house and Dooley would not answer.  She said she had been in a fight with her boyfriend (appellant) earlier and wanted to move out.  When they asked if appellant was inside the house, she didn't answer.

{¶5} In the meantime, Ptl. Garn arrived on the scene and observed appellant leaving from the back of the house. Garn thought appellant was about to take off running and yelled to him to stop. Appellant said he heard people talking and just came outside to smoke a cigarette. Webb came over to speak to appellant and asked if Dooley had harmed herself. Appellant said they had been in an argument. Both Webb and Garn saw blood on appellant's hands. Webb asked where the blood came from and appellant said Dooley was just trying to leave and he wasn't going to answer any questions without an attorney present. Officers cuffed appellant and placed him in Webb's cruiser because they were still evaluating the situation.

{¶6} Dooley was then placed in Garn's cruiser. Garn told Dooley officers needed to check inside the house to make sure no one was inside, injured, due to the blood found on Dooley and appellant. According to Garn, Dooley acquiesced and gave him a set of keys which she kept on a chain around her neck. Garn testified Dooley was in his cruiser for only a few minutes before he requested the keys and she readily consented to entry.

{¶7} Officers knocked on the door of the residence and announced themselves. Bond stood by as Garn entered the locked residence with Dooley's key. Webb followed Garn inside, where they encountered a locked door and another door shut but not locked. Behind the unlocked door was a bathroom in which officers found a bathtub containing a large marijuana plant. A key on Dooley's ring opened the locked door, revealing a marijuana grow operation. Also in plain view throughout the living room were marijuana plants, hanging and drying, and drug paraphernalia.

{¶8} Dooley was taken from the scene and involuntarily committed to MedCentral Hospital for three days.

{¶9} Dooley testified at the suppression hearing. She said she was trying to move out on August 2, 2012 when the police arrived and was on her way to get something to eat. She only locked the door behind her because it was her habit to do so. She said she was wearing a sweater despite the heat because of air conditioning, and said she was cooperative with police and answered their questions. She told them appellant was the only person inside the house and didn't understand why they placed him in a cruiser because he hadn't done anything. She told them she'd cut herself earlier in the day. She said she told police at least three times she would not give them her keys, and only relented when they said they would forcibly enter if she didn't turn over the keys.

{¶10} Dooley claimed she didn't know why her aunt called the police; she had messaged her through Facebook to ask for "help," but she only meant help with moving. She acknowledged she told officers she and appellant argued earlier in the day but said it was resolved and was not physical. In response to questions from the trial court, Dooley said she didn't know why she was committed to MedCentral that day and said she "didn't recall" telling officers she wanted to hurt herself.

{¶11} Appellant was charged by indictment with one count of illegal cultivation or manufacture of marijuana pursuant to R.C. 2925.04(A) and (C)(5)(c), a felony of the fifth degree; one count of marijuana possession pursuant to R.C. 2925.11(A) and (C)(3)(c), a felony of the fifth degree; and one count of possession of drug paraphernalia pursuant

to R.C. 2925.14(C)(1), a misdemeanor of the fourth degree. Appellant entered pleas of not guilty and moved to suppress evidence seized from the residence.

{¶12} In the meantime, a suppression hearing was held in Dooley's companion case, and appellant requested a transcript of the hearing to evaluate the issues in his own case. Appellant and appellee stipulated to the testimony and evidence provided in Dooley's suppression hearing and waived any further evidentiary hearing. That transcript has also been made part of the record for our review.

{¶13} The trial court overruled both Dooley's and appellant's motions to suppress on March 22, 2013, finding based upon the totality of the circumstances, it was reasonable for officers to believe someone might be in the house in need of immediate aid and sufficient exigent circumstances therefore justified the warrantless entry into the home.

{¶14} Appellant subsequently entered pleas of no contest to Count I, illegal cultivation or manufacture of marijuana, and Count II, marijuana possession. Appellee dismissed Count III, possession of drug paraphernalia. The trial court requested a presentence investigation and ultimately sentenced appellant to two prison terms of nine months each, to be served consecutively. The prison terms are suspended on the condition appellant successfully completes 30 months of community control through the Richland County Court Services program.

{¶15} Appellant now appeals from the trial court's decision overruling his motion to suppress.

{¶16} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶17} "I.  THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION TO SUPPRESS BASED UPON THE ILLEGAL SEARCH OF DEFENDANT-APPELLANT'S PERSON AND PROPERTY BY LAW ENFORCEMENT AS WELL AS THE ILLEGAL SEIZURE OF EVIDENCE FROM DEFENDANT-APPELLANT BY LAW ENFORCEMENT."

**ANALYSIS**

{¶18} In his sole assignment of error, appellant argues the trial court erred in overruling his motion to suppress.

{¶19} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact.  *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998).  During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility.  *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996).  A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.  *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996).  Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard.  *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶20} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal.  First, an appellant may challenge the trial court's finding of fact.  In

reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 620 N.E.2d 906 (8th Dist.1994).

{¶21} Appellant argues the inappropriate legal test was applied; he asserts Dooley did not give effective consent to the search of the premises. He further argues that the warrantless search was not justified by exigent circumstances. We find, howeve, based upon the totality of the circumstances, entry into the residence without consent was justified by the community-caretaking/emergency-aid exception to the warrant requirement.

{¶22} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507 (1967). The exigent-circumstances exception has been recognized in situations of hot pursuit of a fleeing felon, imminent destruction of evidence, the need to prevent a suspect's escape,

and risk of danger to the police and others. *United States v. Rohrig,* 98 F.3d 1506, 1515 (6th Cir.1996).

{¶23} Another subset of the exigent-circumstances category is the emergency-aid exception. Courts recognize a community-caretaking/emergency-aid exception to the Fourth Amendment warrant requirement is necessary to allow police to respond to emergency situations where life or limb is in jeopardy. *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037, ¶ 21. In dealing with this exception, "[t]he key issue is whether the officers 'had reasonable grounds to believe that some kind of emergency existed * * *. The officer must be able to point to specific and articulable facts, which, taken with rational inferences from those facts, reasonably warrant intrusion into protected areas.' " *State v. White*, 175 Ohio App.3d 302, 2008-Ohio-657, 886 N.E.2d 904, ¶ 17 (9th Dist.). The emergency justifies the warrantless entry, and, while lawfully present, the police may seize evidence in plain view. See *Thompson v. Louisiana,* 469 U.S. 17, 10 S.Ct. 409, 83 L.Ed.2d 246 (1984); *State v. Buzzard,* 112 Ohio St.3d 451, 860 N.E.2d 1006, 2007–Ohio–373, ¶ 16.

{¶24} Considering the totality of the circumstances, we find exigent circumstances existed regarding the safety of other people possibly in the home. See also, *State v. Brooks*, 5th Dist. Richland No. 2012 CA 0071, 2013-Ohio-3505. Here, officers were dispatched for a welfare check after a disturbing text; Dooley confirmed she texted her aunt she needed "help." Upon officers' arrival, they found Dooley injured and bleeding, acknowledging that she and appellant had argued, and not answering whether anyone else was inside the house. When they made contact with appellant, not only did he also have blood on him, but he confirmed some type of argument

occurred and refused to answer questions. Concern existed for Dooley's physical or emotional well-being because she was involuntarily admitted to the hospital in the wake of this incident. Based upon the totality of the circumstances, the warrantless entry into the home was justified.

{¶25} Appellant's sole assignment of error is overruled.

## CONCLUSION

{¶26} Appellant's sole assignment of error is overruled and the judgment of the Richland County Court of Common Pleas is affirmed.

By: Delaney, J. and

Wise, P.J.

Baldwin, J., concur.