[Cite as *State v. Morgan*, 2014-Ohio-1900.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 13-CA-30 |
| | : | |
| NEIL A. MORGAN II | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Fairfield County Court of Common Pleas, Case No. 2012-CR-0274


JUDGMENT:     REVERSED AND REMANDED


DATE OF JUDGMENT ENTRY:     May 1, 2014


APPEARANCES:

For Plaintiff-Appellee:     For Defendant-Appellant:

GREGG MARX     THOMAS R. ELWING
FAIRFIELD CO. PROSECUTOR     60 West Columbus Street
ZOE A. LAMBERSON     Pickerington, OH 43147
239 W. Main St., Ste. 101
Lancaster, OH 43130

*Delaney, J.*

{¶1}   Appellant Neil A. Morgan II appeals from the January 10, 2013 Journal Entry and March 7, 2013 Judgment Entry of Sentence of the Fairfield County Court of Common Pleas.  Appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶2}   The following facts are adduced from the suppression hearing held before the trial court on October 5, 2012.

{¶3}   This case arose in the afternoon of June 19, 2012 when members of the Fairfield County Sheriff's Office SCRAP Unit (Street Crime Reduction and Apprehension Program) performed a "knock and talk" at appellant's rural Berne Township residence in Fairfield County, Ohio.  The Fairfield-Hocking Major Crimes Unit had received two anonymous tips alleging a marijuana grow operation and methamphetamine lab were on the property.

{¶4}   Two people were known to live at the residence: appellant and his girlfriend, Anita Graf.  Deputy Lyle Campbell testified he knew appellant and Graf from an earlier encounter, also a "knock and talk," involving an allegation of drug activity.  Campbell stated appellant was alleged to be a member of an outlaw motorcycle gang called "The Avengers."

{¶5}   The SCRAP Unit officers planned their approach prior to their arrival at appellant's residence.  Campbell would approach the front door, knock, and ask to speak with appellant and Graf; four additional officers would spread out and take up positions around the perimeter of the residence for "officer safety" and ensure no one left through the back of the residence.

{¶6}  Upon arrival, one motorcycle was parked in front of the residence, a Harley-Davidson model registered to appellant.

*Knock and Entry*

{¶7}  Upon Campbell's knock, Graf answered the door.  Campbell identified himself, stated he was there because of drug activity complaints, and asked if he could come in.  Graf stated she needed to put her dog away and closed the door.

{¶8}  Almost immediately as Graf closed the door, Sgt. Hamler advised Campbell two officers in the rear of the residence had observed marijuana plants on a rear deck.  Campbell knocked again and told Graf to come out.  He heard people inside saying "hang on," but he decided to make an "exigent entry," opened the door partway, and announced "Sheriff's office, we're coming in."  He testified Graf and appellant were walking toward the front door from the dining room as he entered the residence.

{¶9}  Graf and appellant were brought outside and officers swept the entire residence to ensure no additional occupants were inside.

*Officers Enter Perimeter and Spot Marijuana Plants*

{¶10} In the meantime, Deputy Luke Williams, also a member of the SCRAP Unit, arrived at appellant's residence and immediately walked through appellant's yard to the rear of the property for "officer safety."  He observed an elevated rear deck containing seven potted marijuana plants in pots.  He notified the other officers immediately and word spread to Campbell, who was attempting to speak to Graf at the front door.

{¶11} Officers detained Graf and appellant outside the residence awaiting the arrival of a search warrant.

{¶12} Photos of the property on June 19, 2012 were introduced at the suppression hearing and used extensively by both parties. The photos depict a small bungalow-style home with a front door directly in the center, approached by a sidewalk and steps requiring a short descent to approach the house. The home is surrounded by a yard in front of a wooded area to the rear, also outbuildings, a motor home, and a vehicle covered with a tarp nearby. In front of the covered vehicle is a yellow sign which is illegible in the photos but according to the uncontroverted testimony of Anita Graf states "No Trespassing." A "no trespassing" sign is also posted in the front window of the residence. A door is visible at the side of the house.

{¶13} The elevated rear deck upon which the marijuana was observed is only visible from the rear of the property. The deck does not extend the length of the house and is sheltered on one side by a wall. The elevated deck contains seven pots of readily-apparent marijuana which can be seen through the balusters of the deck in the photographs.

{¶14} Appellant was charged by indictment with one count of illegal assembly or possession of chemicals for the manufacture of drugs, a felony of the third degree [R.C. 2925.04]; one count of trafficking in marijuana, a felony of the fourth degree [R.C. 2925.03(A)(2) and 2925.03(C)(3)(c)]; one count of possession of marijuana, a felony of the fifth degree [R.C. 2925.11(A) and 2925.11(C)(3)(c)]; and one count of weapons under disability, a felony of the third degree [R.C. 2923.13(A)(2)]. Each count included a firearm specification pursuant to R.C. 2941.141 and a specification concerning forfeiture of property pursuant to R.C. 2941.1417, to wit, $2,459.35.

{¶15} Appellant entered pleas of not guilty and filed a motion to suppress all evidence obtained in the search of his property on June 19, 2012.  A suppression hearing was held before the trial court on October 5, 2012, and the trial court filed a Journal Entry overruling the motion to suppress on January 10, 2013.

{¶16} On February 28, 2013, appellant entered pleas of no contest to Counts I, II, and IV and the accompanying forfeiture specifications.  The firearm specifications were dismissed on all but Count II.  Appellant was sentenced to an aggregate prison term of 48 months to be followed by a term of 3 years of community control.

{¶17} Appellant appeals from the trial court's decision overruling his motion to suppress.

{¶18} Appellant raises five assignments of error:

### ASSIGNMENTS OF ERROR

{¶19} "I.  THE TRIAL COURT ERRED IN FINDING THAT THE ACTIONS OF POLICE OFFICERS IN SURROUNDING APPELLANT'S HOME AND TRESPASSING ON THE CURTILAGE WITHOUT A WARRANT DID NOT VIOLATE THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14, OF THE OHIO CONSTITUTION."

{¶20} "II. THE TRIAL COURT ERRED IN FINDING THAT THE WARRANTLESS ENTRY OF APPELLANT'S HOME WAS JUSTIFIED BY EXIGENT CIRCUMSTANCES."

{¶21} "III. THE TRIAL COURT ERRED IN FINDING THAT THE WARRANTLESS SEARCH BY LAW ENFORCEMENT OFFICERS WAS JUSTIFIED BY THE PLAIN VIEW EXCEPTION."

{¶22} "IV. THE TRIAL COURT ERRED IN FAILING TO FIND THAT A SEARCH WARRANT OBTAINED AFTER WARRANTLESS POLICE ENTRY WAS THE FRUIT OF PRIOR FOURTH AMENDMENT VIOLATIONS."

{¶23} "V. THE TRIAL COURT ERRED IN FINDING THAT A SEARCH WARRANT OBTAINED AFTER WARRANTLESS POLICE ENTRY WAS ISSUED ON VALID PROBABLE CAUSE."

## ANALYSIS

### I., II., III., IV., V.

{¶24} Appellant's five assignments of error are related and will be considered together. Appellant's first assignment of error challenges law enforcement's intrusion upon the curtilage of his residence without a warrant. We agree law enforcement was not lawfully in a place from which they could observe the marijuana plants. Moreover, we find this conclusion dispositive of appellant's remaining assignments of error.

*Appellate Standard of Review*

{¶25} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial

court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶26} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

*Fourth Amendment Analysis*

{¶27} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception to the warrant requirement applies. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The government may not intrude into areas where legitimate expectations of privacy exist.

{¶28} In determining whether the Fourth Amendment protects against a search, "the rule that has emerged * * * is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Katz,* 389 U.S. at 361 (Harlan, J., concurring). See *Rakas v. Illinois*, 439 U.S. 128, 143–144, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *State v. Williams*, 73 Ohio St.3d 153, 166–167, 652 N.E.2d 721 (1995).

{¶29} The triggering event of Fourth Amendment analysis in this case is the officers' entry upon the "perimeter" of appellant's property and subsequent progress through the yard to the rear of the property, allowing them to view the elevated deck containing the pots of marijuana.

*Knock and Talk*

{¶30} Officer Campbell's initial approach to the house and first conversation with Anita Graf is unobjectionable. The "knock and talk" effectuated at appellant's door, prior to the discovery of the marijuana, is recognized as a constitutionally sound police procedure. *Kentucky v. King*, ____ U.S. ____, ____, 131 S.Ct. 1849, 1862, 179 L.Ed.2d 865 (2011). "When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do. And whether [the person at the door is an officer or a private person], the occupant has no obligation to open the door or to speak." *State v. Miller*, 2nd Dist. Montgomery No. 24609, 2012-Ohio-5206, 982 N.E.2d 739, ¶ 18, citing *King*, supra, 131 S.Ct. at 1862. The occupant, now alerted to the police presence, may even choose to open the door and speak but need not allow officers to enter and may refuse to answer questions at any time. Id.

Moreover, the knock and talk procedure may be limiting for officers when, as here, they meet with a closed door. Nevertheless, "when the police knock on a door but the occupants choose not to respond or speak, or maybe even choose to open the door and then close it, the officers must bear the consequences of the method of investigation they've chosen." *U.S. v. Ramirez*, 676 F.3d 755 (8th Cir.2012). Law enforcement may not use the knock and talk procedure to create an intrusion into other areas of the property; to do so invalidates the consensual nature of knock-and-talk and risks unconstitutional intrusion.

*Entry into the Curtilage*

{¶31} In the instant case, while the knock and talk was taking place, other members of the SCRAP Unit entered onto the curtilage of appellant's property. It was this entry which allowed officers to observe the marijuana and from which the rest of their investigative steps arose, including entry into appellant's residence and request for a search warrant.

{¶32} The question, therefore, is whether the officers were lawfully in a position to view the marijuana plants on the rear elevated deck, thus setting into motion the remaining events resulting ultimately in the execution of a search warrant. We conclude they were not.

{¶33} The state is prohibited from making unreasonable intrusions into areas where people have legitimate expectations of privacy without a search warrant, including a person's home and the curtilage surrounding it. *State v. Vondenhuevel*, 3rd Dist. Logan 8-04-15, 2004-Ohio-5348, ¶ 10. The curtilage is considered part of the home itself for Fourth Amendment purposes.

{¶34} The elevated rear deck is in the curtilage of the property. "The curtilage is an area around a person's home upon which he or she may reasonably expect the sanctity and privacy of the home. For Fourth Amendment purposes, the curtilage is considered part of the home itself." *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). The only areas of the curtilage where officers may lawfully go are those impliedly open to the public, including walkways, driveways, or access routes to the residence. *State v. Cook,* 5th Dist. Muskingum Nos. 2010-CA-40, 2010-CA-41, 2011-Ohio-1776, ¶ 65, citing *State v. Birdsall*, 6th Dist. Williams No. WM-09-016, 2010-Ohio-2382, ¶ 13.

{¶35}   Because the curtilage of a property is considered to be part of a person's home, the right of the police to come into the curtilage is highly circumscribed. *State v. Woljevach*, 160 Ohio App.3d 757, 2005-Ohio-2085, 828 N.E.2d 1015, at ¶ 29. Absent a warrant, police have no greater rights on another's property than any other visitor has. Id.

{¶36} The photos in this case are dispositive; the officers could not have seen the marijuana had they not entered appellant's back yard, an area which is part of the curtilage of the residence.  This is not a case of officers entering where they may lawfully be present to ask questions of a citizen.  The front door of the residence is the means of ingress and egress.  A "no trespassing" sign is posted in the front window. The front sidewalk also leads to a door at the side of the house from which the elevated rear deck is not visible.  Exhibits B and C demonstrate the elevated rear deck is not visible from the front of the property.  The rear deck is only visible from the rear of appellant's property.

{¶37} We find the Second District Court of Appeals' ruling in *State v. Peterson,* on very similar facts*,* to be instructive:

> It is important that the police were at [appellant's] residence initially to execute a knock-and-advise and not to execute a search warrant. The purpose of the knock-and-advise program, as stated in a general order of the Dayton Police Department, is to notify residents that a complaint has been received alleging drug activity at the premises. This, of course, can be accomplished by going to the front door of the residence and knocking and advising the resident of the purpose of the visit. In executing a search warrant, the warrant normally authorizes officers to enter the residence, the surrounding curtilage, and any detached garage or outbuildings listed in the warrant.
>
> * * * *.
>
> In this matter, Detective House testified at the suppression hearing that the window he looked through was on the side of the appellant's residence, which he accessed by walking on the lawn. Further, House testified that there was no driveway or sidewalk by the window and that he was standing a few feet from the side of the house. Similar to the officer in *Lorenzana,* House made his observations while standing on land not expressly open to the public.

Citizens have an objectively reasonable expectation that police will not enter onto the side yards of their homes in the nighttime and peer into their basement windows. We agree with the appellant that Detective House's observations were made while he was trespassing on the curtilage of Peterson's property. Therefore, the evidence recovered by the police during the warrantless and warrant searches was the product of the initial unlawful police conduct. The evidence was the fruit of the poisonous tree and must be suppressed. *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

*State v. Peterson*, 173 Ohio App.3d 575, 584-585, 879 N.E.2d 806 (2007).

{¶38} We find it unnecessary to reach appellant's civil trespass argument and note the presence of "no trespassing" signs is only one factor in our determination appellant's yard is not "impliedly open to the public." *Cook*, supra. "No trespassing" signs may be indications a property owner expects privacy within a certain area of the curtilage. *Woljevach*, supra, 2005-Ohio-2085 at ¶ 30, citing *United States v. Depew*, 8 F.3d 1424, 1428 (9 C.A.1993), overruled on other grounds, *United States v. Johnson*, 256 F.3d 895 (2001); see, also, *State v. Russo*, 68 Ore.App. 760, 762, 683 P.2d 163 (1984); *State v. Christensen*, 131 Idaho 143, 147–148, 953 P.2d 583 (1998). "It reasonably follows that areas so designated are places into which the public is expressly not invited." Id. The presence of "no trespassing" signs does not make law enforcement's encroachment onto the curtilage presumptively unreasonable when

officers are otherwise lawfully present.  In this case, under these circumstances, officers could not enter the back yard.

### Plain View Exception Does Not Apply

{¶39} The plain-view exception to the warrant requirement does not apply to this case.  "[I]n order to qualify under the plain view exception, it must be shown that (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent." *State v. Williams*, 55 Ohio St.2d 82, 85, 377 N.E.2d 1013 (1978).  Because we find law enforcement was not lawfully present to observe the marijuana, the plain view exception to the warrant exception does not apply.  *State v. Tanner,* 4th Dist. Ross No. 94 CA 2006, unreported, 1995 WL 116682, * 3 (March 10, 1995).  Appellant's third assignment of error is sustained.

### No Exigent Circumstances

{¶40} Officer Campbell's entry into appellant's residence after Anita Graf closed the door to lock up a dog was attributed to exigent circumstances, those being the destruction of evidence including marijuana and "stuff" associated with it.  (T. 47). Exigent circumstances are an exception to the search warrant requirement and the destruction of evidence has been recognized as one such exigent circumstance.  *State v. Methvin,* 5th Dist. Richland No. 13CA44, 2014-Ohio-590, ¶ 22, citing *United States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir.1996).

{¶41} Exigent circumstances only excuse the absence of a warrant where the conduct of the police is otherwise reasonable, however:

[W]arrantless searches are allowed when the circumstances make it reasonable, within the meaning of the Fourth Amendment, to dispense with the warrant requirement. Therefore, * * * the exigent circumstances rule justifies a warrantless search when the conduct of the police preceding the exigency is reasonable in the same sense. Where * * * the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed.

*Kentucky v. King,* 131 S.Ct. 1849, 1858, 179 L.Ed.2d 865 (2011).

{¶42} Conversely, if police create their own exigency by engaging in conduct that violates the Fourth Amendment, the search should not be allowed. *State v. Stacey*, 6th Dist. Ottawa No. OT-13-002, 2013-Ohio-4422 ¶ 34. Because the exigency here was based upon the observation of the marijuana, which we have found to be unreasonable for Fourth Amendment purposes, the entry into the residence is not justified by exigent circumstances and appellant's second assignment of error is sustained.

*Results of the Search Warrant Must be Suppressed*

{¶43} In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate [or judge], neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination of whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is

simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), syllabus, following *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

{¶44} In light of our resolution of the Fourth Amendment violation, the marijuana may not be considered probable cause for the search warrant. Where law enforcement is in the curtilage without a warrant and observes marijuana, detection of marijuana is the result of an unlawful search and the presence of the marijuana is then unavailable to support probable cause for the ensuing search warrant. See, *Woljevach*, supra, 2005-Ohio-2085 at ¶ 26.

{¶45} Excluding the marijuana, therefore, the affidavit for search warrant consists of the anonymous tips. Specifically, the affidavit for search warrant consists of the marijuana plants observed at the residence and

> * * * [M]ultiple complaints from multiple individuals reporting that [appellant] is growing Marijuana and manufacturing Methamphetamine from his residence at 795 Blue Valley Road, SE. Some of the reports indicated [appellant] was growing Marijuana in the barn behind his house. * * *. (Exhibit A).

{¶46} Campbell testified there were in fact two such complaints (T. 10-11) and he was not sure how old the tips were, although one dated possibly from February or March and the other from April or May. (T. 22). Upon redirect examination, appellee asked Campbell whether the tips alone constituted probable cause for a search warrant and his response was "Absolutely not." (T.38).

{¶47} Our inevitable conclusion is, therefore, the search warrant must fail because it is not supported by probable cause based upon the tips alone. In light of the elimination of the marijuana, the warrant is facially deficient. The good-faith exception does not apply in this case to avoid the remedy of suppression of the evidence because "[t]he good-faith exception * * * is not a license to give an otherwise insufficient warrant validity." *State v. Williams*, 173 Ohio App.3d 119, 127, 877 N.E.2d 717, 2007–Ohio–4472, ¶ 26.

{¶48} Appellant's fourth and fifth assignments of error are sustained.

## CONCLUSION

{¶49} Appellant's five assignments of error are sustained for the reasons stated in the foregoing opinion and the judgment of the Fairfield County Court of Common Pleas is reversed. This matter is hereby remanded to the trial court for further proceedings consistent with this opinion.

By: Delaney, J. and

Gwin, P.J.

Wise, J., concur.